UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| TODD YOHE, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : CIVIL NO. 3:CV-13-1599 |
| | : |
| VINCENT MOONEY, JR., et al., | : (Judge Kosik) |
| | : |
| Respondents | : |


**MEMORANDUM**

**I.    Introduction**

    This matter is before the court on an Amended Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 filed by Todd Yohe ("Petitioner"). (Doc. 12.)

Petitioner proceeds pro se in this action.  In his amended petition, he raises six (6)

challenges to his Dauphin County Court of Common Pleas conviction for Murder of

the Second Degree, Robbery and Conspiracy.  He was sentenced to life imprisonment

for Second Degree Murder, a concurrent 48-96 month incarceration sentence for

Robbery, a consecutive 36 to 72 month sentence for Conspiracy, and a fine.

Following careful consideration of the parties' submissions, the amended petition for

habeas relief will be denied.  Additionally, a certificate of appealability will not be

issued.

## II.    Background

### A.    Factual Background

In addressing Petitioner's appeal from the Post Conviction Relief Act[1] petition

which Petitioner filed, the Pennsylvania Superior Court provided the following

background:

> The record reflects that on July 1, 2007, [Petitioner], along with co-conspirators Michael Lyter, Stephen Alfera, and Nathan Bell, were present at [Petitioner]'s apartment.  At some point during the evening, [Petitioner], who allegedly did not have a license to drive, asked Alfera to drive Lyter, in [Petitioner]'s vehicle, to Harrisburg to buy marijuana from the victim, a known drug dealer.  Alfera testified at trial that he drove Lyter to Harrisburg, parked and watched as Lyter went into an apartment for 15-20 minutes, exited the apartment, and disappeared from view for approximately one hour before he returned to the car all "jumpy and antsy."  Trial Court Opinion, 5/24/10, at 3.  The men then returned to [Petitioner]'s apartment, and Lyter gave Alfera the half-pound of marijuana, or about $800 to $900 worth, he had obtained from the victim.  **Id.**
>
> The victim was found dead in the entryway to his apartment in the early morning hours of August 1, 2007, shot between the eyes execution style.  Through phone records and interviews with people that knew the victim planned to sell drugs to Lyter on the night of July 31, 2007, the police were led to [Petitioner] and his [co-conspirators], all of whom were ultimately arrested and charged in connection with [the victim's] murder.
>
> On August 4, 2007, [Petitioner] gave a statement to police wherein he claimed that Lyter had told him he had gotten into a confrontation with a drug dealer in Harrisburg who had tried to rob him, and that [Lyter] had shot the dealer in the head.  During the two-day trial ending on

---

[1] See 42 Pa.C.S.A. § 9541 et seq.

November 17, 2009, co-conspirator Bell testified that he had seen the .25 caliber gun used in the crime, that he had heard [Petitioner] and Lyter talking about a $1,000.00 debt the victim owed Lyter, and that on the day of the murder, Lyter had paid [Petitioner] money and/or marijuana for allowing Lyter to use his car.  These statements were corroborated by the trial testimony of Gerald Smith, an inmate who had been incarcerated with [Petitioner] in July 2008.  At trial, Smith testified that [Petitioner] had told him that he had "set up a robbery of a marijuana dealer that went bad and someone got killed in the robbery." **Id.** at 6.  "[Petitioner] told Smith that guys named Steve (Alfera), Nate (Bell) and Mike (Lyter) were trying to pin the murder on him and that he was particularly worried about (Lyter) since he had given [Lyter] a .25 caliber pistol to commit the robbery." **Id.**

Following the jury trial, [Petitioner] was convicted of second[-]degree murder, robbery and conspiracy. [Petitioner] was sentenced on November 18, 2009 [to life imprisonment for second-degree murder, a concurrent term of four to eight years' imprisonment for robbery, and a consecutive term of three to six years' imprisonment for conspiracy.] [N]o post-sentence motions were filed.

(Doc. 21-3 at 2-3, <u>Commonwealth v. Yohe</u>, 6 A.3d 559 (Pa. Super. 2010)).

## III.   Procedural History

### A.   Direct appeal proceedings

Following the trial, Petitioner filed a direct appeal to the Pennsylvania Superior Court and raised the following grounds:

1.   Sufficiency of the evidence to support his convictions;

2.   Trial court error in denying Petitioner's motion in limine to declare co-defendant Nathan Bell incompetent to testify at trial; and

3.   Trial court error in denying Petitioner's motion in limine to exclude statements of Lyter, a non-testifying co-conspirator.

3

(Doc. 21-2 at 8, Pl.'s Br.)  On July 13, 2010, the Pennsylvania Superior Court affirmed Petitioner's judgment of sentence (Doc. 21-3, Super. Op.), and he did not pursue a petition for allowance of appeal at that time with the Pennsylvania Supreme Court.[2]

## B.    PCRA proceedings

Following his direct appeal, Petitioner filed a <u>pro se</u> PCRA petition with the trial court on August 5, 2011.  Following the appointment of counsel, he thereafter submitted an amended petition.  In the amended petition, ineffective assistance of counsel grounds were raised, which included the following:

1.    Ineffective assistance of trial counsel in failing to call Michael Lyter as a defense witness;

2.    Ineffective assistance of trial counsel in developing insufficiency of evidence claim on appeal; and

3.    Ineffective assistance of trial counsel in failing to consult with him and exercise discretionary review to the Pennsylvania Supreme Court on direct review.

(Doc. 21-4 at 5-7.)  An evidentiary hearing was conducted on January 12, 2012.  (Doc. 21-5, Hearing Trans.)  On July 11, 2012, the amended PCRA petition was denied, however Petitioner was granted 30 days to consult with his current PCRA counsel and,

---

[2] In his later filed PCRA petition, Yohe was permitted to file a petition for allowance of appeal nunc pro tunc.  (Doc. 21-6 at 9.)  This was affirmed by the Pennsylvania Superior Court.  (Doc. 21-9.)  While not entirely clear, it appears the Pennsylvania Supreme Court later denied allocator with respect to the <u>nunc pro tunc</u> direct appeal.

if appropriate, to file a petition for allowance of appeal <u>nunc</u> <u>pro</u> <u>tunc</u> from the July 13,

2010 opinion of the Superior Court on direct appeal.  (Doc. 21-6 at 10, Dauphin Cty.

Ct. Op.)  Petitioner thereafter pursued an appeal of the PCRA decision to the

Pennsylvania Superior Court, and raised only the following issue on appeal:

> Did the PCRA court err in denying Appellant's petition for post-conviction relief due to ineffective assistance of counsel where trial counsel failed to speak with Appellant's co-defendant, Michael Lyter, about testifying at trial, when trial counsel was aware of the exculpatory nature of his potential testimony?

(Doc. 21-7 at 9, Pet.'s Br.; Doc. 21-9 at 3-4, 3/15/13 Pa. Super. Op.)  On March 15,

2013, the Superior Court affirmed the PCRA court's order dismissing the PCRA

petition.  (Doc. 21-9 at 10.)  A petition for allowance of appeal filed with the Supreme

Court of Pennsylvania was denied on December 2, 2013.

## C.    Present Habeas Proceedings

The pending amended federal habeas petition raises the following grounds:

1.    Ineffective assistance of trial counsel in violation of Sixth and Fourteenth Amendments in failing to investigate and call Michael Lyter as a defense witness to present exculpatory evidence;

2.    Insufficient evidence to support convictions in violation of Due Process guarantee of the Fourteenth Amendment;

3.    Ineffective assistance on direct appeal for failing to properly pursue the insufficient evidence claim[3];

---

[3] In his traverse Petitioner withdraws this claim.  As such, it will not be addressed by the court.

4.      Trial Court error in denying motion in limine declaring
        Nathan Bell incompetent to testify;

5.      Trial Court error in denying motion to exclude statements of
        non-testifying co-defendant (Michael Lyter); and

6.      Violation of Due Process guaranteed by the Fourteenth
        Amendment when Commonwealth witness Gerald Smith
        committed perjury.

(Doc. 12, Am. Pet. at 2-3.)[4]  For the reasons that follow, the pending petition will be

denied.

## IV.    Governing Legal Principles

### A.    Standard of Review

Since the instant petition was filed after the effective date of the Antiterrorism

and Effective Death Penalty Act (AEDPA), review of Petitioner's  claims is governed

by 28 U.S.C. § 2254(d).  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 138

L.Ed.2d 481 (1997).  Under the AEDPA, a federal court may not grant habeas relief on

a claim adjudicated on its merits in state court unless that adjudication "resulted in a

---

[4] In the amended petition, six (6) grounds are raised.  (Doc. 12.)  However,
in the memorandum in support of the amended habeas petition, the
following seventh ground is raised for the first time: "Whether Petitioner
is entitled to have all claim(s) raised herein heard or have his post-
conviction relief act rights re-instated in light of teh (sic) state court's
committing error by issuing a final decision on PCRA after granting
appeal rights nunc pro tunc?" (Doc. 13 at 8.)  Because this was not raised
as a ground in the amended habeas petition, and the traverse only refers to
"six grounds" in the habeas petition (Doc. 25), it will not be addressed.

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or

"resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

see also Harrington v. Richter, 562 U.S. 86, 97-98, 131 S.Ct. 770, 783-84, 178

L.Ed.2d 624 (2011); Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519,

146 L.Ed.2d 389 (2000).  The first prong applies both to questions of law and to

mixed questions of law and fact, Williams, 529 U.S. at 384-86, 120 S.Ct. at 1508-09,

while the second prong applies to decisions based on factual determinations, Miller-El

v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003).

 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at

1523.  A state court decision is an "unreasonable application of Supreme Court

authority, falling under the second clause of § 2254(d)(1), if the state court correctly

identifies the governing legal principle from the Supreme Court's decisions but

"unreasonably applies that principle to the facts of the prisoner's case." Williams, 529

U.S. at 413, 120 S.Ct. at 1523.  The federal court on habeas review may not issue the

writ "simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., 529 U.S. at 411, 120 S.Ct. at 1522.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413, 120 S.Ct. at 1523. "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., 529 U.S. at 411, 120 S.Ct. at 1523. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id., 529 U.S. at 409, 120 S.Ct. at 1522. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 2594-95, 115 L.Ed.2d 706 (1991). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 804, 111 S.Ct. at 2595.

The Supreme Court has affirmed that under the AEDPA, there is a heightened level of deference that a federal habeas court must give to state court decisions.  See Harrington, 562 U.S. at 97-99, 131 S.Ct. at 783-85; Felkner v. Jackson, 562 U.S. 594, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011).  The Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 594, 131 S.Ct. at 1307 (citation omitted).

However, "if a properly preserved claim was not addressed by the state court on the merits, the deferential standards of the AEDPA do not apply." Id. at 392.  In such instances, a "federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact." Id. (quoting Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

### B.     Exhaustion and Procedural Default

A habeas petitioner must clear two procedural hurdles before the court may reach the merit of his habeas corpus petition.  These hurdles are those of exhaustion of remedies and procedural default.

A habeas petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.

Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S.838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts.  To "fairly present" a claim, a petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being asserted." Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010)(quoting McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)).  A federal claim not fairly presented to the reviewing state court may be either unexhausted or procedurally defaulted.

A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).[5]  The petitioner has the burden of establishing that the exhaustion

---

[5] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Common Pleas Court and then the Pennsylvania Superior Court either on direct or PCRA appeal, are considered exhausted for the purpose of federal habeas corpus relief under §2254.  See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Cases, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)(per curiam); see also Lambert v. Blackwell, 387 F.3d 210, 233-34 (2004).

requirement has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989);

O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

A petitioner's failure to exhaust state remedies will be excused if state

procedural rules preclude him from seeking further relief in state courts.  Lines v.

Larkins, 208 F.3d 153, 160 (3d Cir. 2000).  Although treated as technically exhausted,

such claims are nonetheless procedurally defaulted.  Lines, 208 F.3d at 160; Coleman

v. Thompson, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 2565. 115 L.Ed.2d 640 (1991).

Similarly, if a petitioner presents a habeas claim to the state's highest court, and that

court "clearly and expressly" refuses to review the merits of the claim due to an

independent and adequate state procedural rule, the claim is exhausted, but

procedurally defaulted.  See Coleman, 501 U.S. at 750.

A federal court cannot review the merits of procedurally defaulted claims unless

the petitioner demonstrates either: (1) "cause" for the procedural default and "actual

prejudice" as a result of the alleged violation of federal law;[6] or (2) failure to consider

the claims will result in a "fundamental miscarriage of justice."  Edwards v. Carpenter,

529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); Wenger v. Frank,

266 F.3d 218, 223-24 (3d Cir. 2001). To establish "cause," a petitioner must establish

that "some objective factor external to the defense" impeded his ability to raise the

---

[6] Where petitioner fails to establish cause, the court need not reach the prejudice prong of the claim before denying it.  See Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986).

claim in state court.  Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91

L.Ed.2d 397 (1986).  Once "cause" has been successfully demonstrated, a petitioner

must then also prove "actual prejudice."  To establish "actual prejudice," "the habeas

petitioner must show 'not merely that the errors at ... trial created a *possibility* of

prejudice, but that they worked to his *actual*  and substantial disadvantage, infecting

his entire trial with error of constitutional dimensions.'"  Id. at 494, 106 S.Ct. at 2648

(citing United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d

816 (1982)(emphasis in original)).

In order for a petitioner to satisfy the fundamental miscarriage of justice

exception to the rule of procedural default, the Supreme Court requires that the

petitioner show that a "constitutional violation has probably resulted in the conviction

of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 852,

867, 130 L.Ed.2d 808 (1995)(quoting Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.)

Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United

States, 523 U.S. 614, 623, 114 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).  "[A]

petitioner asserting actual innocence . . . must rely on 'reliable evidence- whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence'" not presented at trial.  Munchinski v. Wilson, 694 F.3d 308, 337-38 (3d

Cir. 2012)(citing Schlup, 513 U.S. at 324, 115 S.Ct. at 865).  New evidence which

tends to undermine the credibility of a witness "will seldom, if ever, make a clear and

convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions." Sawyer v. Whitley, 505 U.S. 333, 349, 112 S.Ct. 2514, 2524, 120 L.Ed.2d 269 (1992).

There exists a final, very narrowly carved exception to the procedural default rule.  The United States Supreme Court held in Martinez v. Ryan, ___ U.S. ___, ___, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), that a petitioner may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when post-conviction review is the first time a petitioner can bring such claims and petitioner had either ineffective collateral appeal counsel or no counsel at all.  Id. at ___, 132 S.Ct. 1320-21.  The Supreme Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, second or successive collateral petitions, or petitions for discretionary review in state appellate courts. Id. at ___, 132 S.Ct. at 1320.  In order to establish "cause," petitioner must show that collateral appeal counsel was not appointed or was ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 268-69, 80 L.Ed.2d 674 (1984). Martinez, ___ U.S. at ___, 132 S.Ct. at 1318.  Further, petitioner must also demonstrate that the underlying ineffectiveness of trial counsel claim is "substantial" and has "some merit." Id. at ___, 132 S.Ct. at 1318.[7]

---

[7]  We find that Martinez has no application in the instant case in that Petitioner only raises one ineffective assistance of counsel claim and the parties agree that said ground has been exhausted.

Finally, to the extent a petitioner presents unexhausted claims in a habeas petition, the court may nonetheless deny them on the merits pursuant to 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007)("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion.")

## V.    Discussion

The amended habeas petition contains both exhausted and unexhausted, but procedurally defaulted, grounds for relief.  The court will now address the grounds raised in the amended petition.

### A.    Ineffective Assistance of Counsel

Petitioner claims that trial counsel was ineffective for failing to interview and call Michael Lyter as a defense witness at Petitioner's trial.  Petitioner claims that co-defendant Lyter, who was tried and convicted in a separate trial, was willing to testify in his trial and would have offered exculpatory evidence that no conspiracy existed. The parties agree that this ground is exhausted.  It was brought by Petitioner in his PCRA petition and an evidentiary hearing was conducted by the PCRA court. Petitioner was unsuccessful and appealed the issue to the Pennsylvania Superior Court. The Pennsylvania Supreme Court subsequently denied allocator.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. Strickland, 466 U.S. at 686, 104 S.Ct. at 2063. To warrant reversal of a conviction, a prisoner must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id., at 687, 104 S.Ct. at 2064; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008). The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong, as well as the prejudice prong. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Rainey v.Varner, 603 F.3d 189, 197 (3d Cir. 2010). Though Strickland's ineffectiveness inquiry contains both a performance and prejudice component, the Supreme Court has made clear that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." Strickland, 466 U.S. at 697, 104 S.Ct. at 2069." [T]here is no reason for a court deciding an ineffective assistance claim ... even to address both components of the inquiry if the defendant makes an insufficient showing on one." Marshall v. Hendricks, 307 F.3d 36, 86-87 (3d Cir. 2002)(internal citation and quotation marks omitted.)

To prove deficient performance, a prisoner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. at 2064. The court will consider whether counsel's performance was reasonable under all of the circumstances. Id. The court's "scrutiny of counsel's performance

must be highly deferential." See id. at 689, 104 S.Ct. at 2065.  That is, there is a

"strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." Id.  In raising an ineffective assistance of counsel claim, the

petitioner "must first identify the acts or omissions of counsel that are allegedly not to

have been the result of reasonable professional judgment." Id. at 690, 104 S.Ct. at

2066.  Next, the court must determine whether "in light of all the circumstances" those

acts or omissions fall outside of the "wide range of professionally competent

assistance." Id.

A petitioner "must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." United States v.

Hankerson, 496 F.3d 303, 310 (3d Cir. 2007)(quoting Strickland, 466 U.S. at 689, 104

S.Ct. at 2065).  This presumption is overcome by showing either that petitioner's

counsel's "conduct was not, in fact, part of a strategy or by showing that the strategy

employed was unsound." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 1005).

When the record does not disclose counsel's actual strategy, the presumption is

rebutted by a "showing that no sound strategy ... could have supported the conduct."

Id. at 500.

To prove prejudice, a convicted defendant must affirmatively prove that

counsel's alleged errors "actually had an adverse effect on the defense." Strickland,

466 U.S. at 693, 104 S.Ct. at 2067.  "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id. at 694.

In analyzing Petitioner's ineffective assistance of counsel claim, the

Pennsylvania Superior Court used the standard set forth in Commonwealth v. Pierce,

527 A.2d 973, 975 (Pa. 1987)(quoting Com. ex rel. Washington v. Maroney, 235 A.2d

349, 352-53 (Pa. 1967)), which clearly comports with the federal standard announced

in Strickland.

To determine whether counsel was ineffective in failing to call Lyter as a

witness, the Superior Court looked to the standard set forth in Commonwealth v.

Johnson, 27 A.3d 244, 247 (Pa. Super. 2011), which holds as follows:

> A defense counsel's failure to call a particular witness to
> testify does not constitute ineffectiveness per se.
> Commonwealth v. Cox, 603 Pa. 22, 267, 983 A.2d 666, 693
> (2009) (citation omitted).  "In establishing whether defense
> counsel was ineffective for failing to call witnesses a
> defendant must prove the witnesses existed, the witnesses
> were ready and willing to testify, and the absence of the
> witnesses' testimony prejudices petitioner and denied him a
> fair trial." Id. at 268, 983 A.2d at 693.

(Doc. 21-9 at 6-7.)

The Superior Court found that the record supported the determination of the

PCRA court and was free of legal error.  In particular, the Superior Court found that

Petitioner's counsel was not ineffective because a reasonable basis existed for

counsel's actions.

In finding counsel's actions reasonable, the PCRA court relied on the following:

> The credible evidence presented at the PCRA hearing was that Lyter was not available and thus, this claim lacks arguable merit. Nine months prior to [Appellant's] trial, Lyter had been tried and convicted in this court of the first degree murder of Dax Curtis. Lyter had not testified at his own trial. At the time of [Appellant's] trial in November 2009, Lyter had an appeal pending before the Superior Court in which he challenged both the weight and the sufficiency of the evidence upon which he was convicted. [Lyter's appeal was later denied by the Superior Court.] As such, he was actively represented by [counsel]. [Trial counsel], who was aware of Lyter and his involvement in the murder, testified at the PCRA hearing that she inquired of [Lyter's counsel] as to Lyter's availability to testify. She was advised he was not available. This was credible testimony. In any event, it is almost inconceivable in this court's opinion that Lyter's attorney would have advised him to waive his right against self-incrimination and subject him to questioning, or that Lyter would have agreed to such, knowing that anything he said at [Appellant's] trial could be used against him in the future and thus jeopardize any chance Lyter had of escaping his mandatory life sentence. Lyter's testimony at the PCRA hearing that he would have eagerly implicated himself by testifying on [Appellant's] behalf (that it was Nathan Bell and not [Appellant] who provided Lyter with the gun) was not credible.

> Even were this court to find this issue of arguable merit, i.e. that Lyter was available to testify for [Appellant], [trial counsel] offered numerous valid reasons that her decision not to call Lyter was reasonably designed to effectuate [Appellant's] interests. [Trial counsel] testified that she would not have offered Lyter as a witness because there were too many conflicting statements as between Lyter, [Appellant] and the two other co-conspirators (Bell and Alfera) regarding the murder. In addition, Lyter was a good

friend of [Appellant's] and the jury would have found him biased.

(Doc. 21-9 at 7-8.)  The standard applied by the Superior Court with respect to ineffectiveness based upon the failure to call a witness was the same as the standard applied by the trial court.  See Commonwealth v. Bryant, 855 A.2d 726, 74 (Pa. 2004); Danner v. Cameron, 955 F.Supp.2d 410, 439 (M.D. Pa. 213)(quoting Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994)). (Doc. 21-1 at 10.)  The Superior Court found the foregoing to be supported by the record, and rejected Petitioner's arguments that counsel should still have investigated Lyter as a witness, even by court order or subpoena.

This court finds the state court determination to be reasonable in light of the record.  In addition, the record does not support Petitioner's claim of prejudice by the absence of Lyter's testimony.  The record supports counsel's position that as a matter of trial strategy she would not have called Lyter as a witness, even if he was available.  As such, the instant habeas ground of ineffective trial counsel is denied.

### B.    Insufficient Evidence

Petitioner next claims that his due process rights under the Fourteenth Amendment were violated when the evidence used to convict him was insufficient, and that he was innocent. On direct appeal, Petitioner raised the sufficiency of the evidence issue to the extent that he claimed that the evidence was insufficient to convict him of second-degree homicide, conspiracy to commit homicide and

possession of a firearm.[8]  The trial court reviewed this claim, as did the Pennsylvania Superior Court on direct appeal.  The sufficiency claim was reviewed in terms of the robbery, the conspiracy to commit robbery and the second-degree murder. Allocatur was denied by the Pennsylvania Supreme Court on direct appeal.

The Superior Court used the standard set forth in Commonwealth v. Gibbs, 981 A.2d 274, 280-81 (Pa. Super. 2009), which quoted Commonwealth v. Bostick, 958 A.2d 543, 560 (Pa. Super. 2008).  The state court viewed all of the evidence submitted at trial in the light most favorable to the verdict winner and found sufficient evidence to exist to find every element of each crime of which Petitioner was convicted beyond a reasonable doubt.  (Doc. 21-3 at 4-5.)  Specifically, citing to and relying on only state law, the state court found the record to support every element of robbery, as defined by 18 Pa.C.S.A. § 3701, conspiracy as defined by 18 Pa.C.S.A. § 903, and second-degree murder as defined in 18 Pa.C.S.A. § 2505.  (Id. at 6-11.)  The Superior Court affirmed the trial court's conclusion that the record contained ample evidence to convict Petitioner, adopting the trial court's May 24, 2010 opinion, that comprehensively discussed the sufficiency of evidence issue, and thereafter concluded

---

[8] Although on direct review Petitioner challenged the sufficiency of the evidence produced at trial to convict him of second-degree homicide, conspiracy to commit homicide, and possession of a firearm, the Superior Court noted that Petitioner was charged with and convicted of conspiracy to commit robbery, not conspiracy to commit homicide.  Additionally, the certified record revealed no firearms conviction, rather, the third crime of which Petitioner was found guilty was robbery.

as follows:

> The evidence, viewed in the light most favorable to the
> Commonwealth, supported the jury's verdict as to the first
> and third elements - that Lyter shot Dax Curtis once in the
> head with a .25 caliber weapon and that he did so during the
> commission of a robbery.  The evidence offered in support
> was as follows: on the evening of the murder, Lyter called
> his friend Dax Curtis and arranged to meet with him at
> Curtis' Harrisburg house to obtain marijuana from him;
> Lyter told [Appellant] that a person (reasonably believed by
> the jury to be Curtis) had stolen $1,000 from [Appellant] and
> that [Appellant] planned to rob Curtis to get it back;
> [Appellant] possessed a .25 caliber gun which he gave to
> Lyter that night; the victim was killed with a single shot from
> a gun fired at close range into the bridge of his nose and that
> a .25 caliber casing was found at the murder scene; within an
> hour or so of the murder, the victim told his friend and
> neighbor Robert Jones that Lyter was coming over that night
> to buy $1,800 of marijuana; the neighbor doubted Lyter had
> that kind of money to make such a purchase and indicated
> that the victim did not normally come out of his home that
> late at night to make drug deals; after arriving and parking
> near the victim's home, Lyter got out of the car alone and
> was gone for almost an hour; after Lyter returned to the car,
> he got in "jumpy and antsy" and told Alfera to drive; Lyter
> was in possession of a large quantity of marijuana when he
> jumped in the car; on his drive back to [Appellant]'s
> Marysville home, Lyter threw his shirt and hat out of the car
> window; Lyter was observed wearing a different shirt than
> the one worn when he left [Appellant]'s home to travel to
> Harrisburg; Lyter appeared shaken upon his return home;
> Lyter told Alfera that he needed to cover for him by making
> up a story to tell compatriots Bell and Yohe that while Lyter
> was in Harrisburg, Lyter had to shoot his gun to scare
> someone away.
>
> Finally, with regard to the third element - that Lyter killed
> Curtis while Lyter and [Appellant] were partners in
> committing or attempting to commit robbery - the evidence

> in support was sufficient as well and was outlined above:
> defendant knew Lyter's immediate plan was to rob the victim
> and that in furtherance of this intended crime, defendant
> gave Lyter a gun, a car and a driver.  In addition, [Appellant]
> indicated that he understood that Lyter's intent was to rob
> and murder the victim.  As such, [Appellant] was shown to
> have been a knowing and voluntary partner with Lyter in his
> commission of the felony, during which Lyter murdered
> Curtis.

(Doc. 21-3 at 11-12 citing 5/24/10 Tr. Ct. Op. at 12-13.)  In analyzing the sufficiency

of the evidence, the state court was guided by state law and concluded that the

Commonwealth presented sufficient evidence to sustain Petitioner's convictions.

(Doc. 21-3 at 5-12.)

Any error of state law is not capable of being pursued by a Petitioner in a

federal habeas corpus petition.  See Swarthout v. Cooke, ___ U.S. ___, 131 S.Ct. 859

(2011).  Moreover, even if this was a recognizable claim, the state court's analysis is

clearly in accord with applicable federal law.  Sufficiency of the evidence claims are

governed by Jackson v. Virginia, 443 U.S. 307 (1979), in which the Supreme Court

held that the question for habeas courts is "whether, after reviewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the  crime beyond a reasonable doubt." Id. at 319.

When historical facts support conflicting inferences, the habeas court must

presume that the trier of fact resolved those conflicts in favor of the prosecution.  Id.

at 326.  The habeas court must also consider the types of evidence the state courts

deem relevant to prove the elements of the offense at issue because the elements of the criminal offense are defined by state law.

In looking at each of the crimes of which Petitioner was convicted in light of the evidence presented in the record, the state court was not unreasonable in finding Petitioner guilty of the crimes of which he was convicted. The record has ample evidence supporting each of the elements of each crime charged. As such, the court will deny this ground.

### C.    Trial Court Error

In his habeas petition, Petitioner raises two grounds of error committed by the trial court. He first claims that the trial court committed error when it denied Petitioner's motion in limine to declare Nathan Bell incompetent to testify. He next claims that the trial court erred in denying his motion to exclude the statements of his non-testifying co-defendant (Lyter). Respondent argues that both of these grounds are unexhausted because they were not presented by Petitioner in his PCRA petition. The court first points out that for exhaustion to occur, the ground can be raised either in the direct appeal or the PCRA petition, as long as it is "fairly presented" to the appellate state court.

In the instant action, both of these claims were presented as trial court errors in Petitioner's direct appeal, which was addressed by both the trial and the Pennsylvania Superior Court. Moreover, allocatur was denied by the Pennsylvania Supreme Court.

The problem, however, is that the grounds were not fairly presented in the state court as federal issues.  They were presented by Petitioner and addressed by the state court as state law issues.  Although Petitioner presents them now his habeas petition as due process violations, they were not presented to the state court as such.  Accordingly, they are unexhausted.  While unexhausted, they cannot now be brought again as federal issues in the state court.  As such, exhaustion will be excused in that the issues are procedurally defaulted.

The only way this court can address a procedurally defaulted claim on the merits is if the Petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice.  Petitioner demonstrates neither.  As such, the court will not address these claims.

### D.    Violation of Due Process - Perjured Testimony

Petitioner argues that his right to Due Process under the Fourteenth Amendment was violated when Commonwealth witness Gerald Smith allegedly perjured himself by testifying at trial that Petitioner told him that he set up a robbery and someone got killed. According to Petitioner, Smith was in "protective custody" at SCI-Camp Hill and, therefore, could not have spoken with him.

Respondent argues that this ground has never been presented to the state courts and, as such, is unexhausted.  Petitioner acknowledges that he has not presented this ground to the state courts, and that it is now procedurally defaulted, but argues that his

procedural default is excused under the miscarriage of justice exception.  (Doc. 13 at 22, Traverse n. 9.) In particular, he maintains that Smith testified at trial that Petitioner admitted to him that he set up a robbery of a drug dealer and that someone got killed (Id. at 22), but that this testimony was not true in that Smith was confined in the Restricted Housing Unit in a part of the prison separate from where Petitioner was confined.

While Petitioner admits that he did not exhaust this ground, or for that matter ever raised it at all in the state court, he maintains that his conviction was obtained in violation of the Due Process Clause of the Fourteenth Amendment because the conviction was a result of perjured testimony.  As such, he claims he is entitled to relief under the miscarriage of justice exception because his procedural default is excused. (Id.)

In reviewing the record, there is no doubt that this claim has never been presented to the state courts.  As such, the claim is clearly unexhausted.  Because Petitioner cannot now raise this ground in his direct appeal or his PCRA, the ground is considered "technically exhausted," but procedurally defaulted. The alleged "perjured" testimony was offered by Gerald Smith during Petitioner's trial, and therefore known to Petitioner at that time.  Petitioner seeks to excuse the procedural default not on the ground of cause and prejudice, but rather because a miscarriage of justice has allegedly occurred.

25

In order to demonstrate that a miscarriage of justice has occurred, Petitioner must show that based on Smith's alleged perjury, a constitutional violation has probably resulted in his conviction and that he is actually innocent.  Arguing legal insufficiency is not enough.  Petitioner is required to show that he is factually innocent, and must rely on reliable evidence such as exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence that was not presented at his trial.  Any new evidence offered by Petitioner undermining the credibility of Smith is not enough to show that a reasonable juror would have believed Smith's original account of Petitioner's actions.

The Respondents did not address the miscarriage of justice exception to procedural default.  Rather, they claim that the ground is unexhausted in that it was not pursued in the PCRA, and therefore is unexhausted.[9]  They go no further. The court finds that the ground is unexhausted and procedurally defaulted for the following reasons.

Petitioner contends that Smith lied when he was a witness for the Commonwealth at the trial.  Whether Smith was being truthful was a credibility issue during the trial, and is not an issue to be examined on federal habeas corpus review.  Moreover, although not raised as an issue, the court notes that Smith was certainly

---

[9] As previously stated, this ground could have been exhausted by Petitioner on direct appeal as well, but was not included therein.

subject to cross-examination at the trial.  Petitioner does not raise on direct appeal, in his PCRA, or for that matter even in the instant petition that trial counsel was ineffective in failing to pursue this issue.[10]  Petitioner cannot just argue in his federal petition that a Commonwealth witness was not truthful.  See generally Commonwealth v. McCandless, 788 A.2d 713 (Pa. Super. 2002).

In addition, even if Petitioner were able to demonstrate such perjury, he would still be unsuccessful in attempting to argue a miscarriage of justice to excuse his procedural default.  There is ample evidence in the record, even excluding Smith's testimony, for a reasonable juror to find that Petitioner was not actually innocent of the crimes of which he was convicted.  A review of the record demonstrates sufficient evidence, as previously discussed, to support the state court's conviction of Petitioner. While Petitioner tries to combine the instant ground with trial counsel's failure to call Lyter as a witness, the court has already rejected the ground raised regarding calling Lyter as a witness.  Therefore, this lends no support or strength to Petitioner's argument.

The miscarriage of justice exception is rare and applied only in rare circumstances. It extends only to those truly deserving.  See Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995); Werts v. Vaughn, 228 F.3d 178 (3d Cir. 2000).  This is not

---

[10]  As such, Martinez has no application here. Petitioner does not argue that it does.

such a case.   As such, the last ground raised by Petitioner will be rejected.

## VI.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  There is no basis for the issuance of a COA.

## VII.  Conclusion

In accordance with the foregoing, the petition for writ of habeas corpus will be denied.  An appropriate order follows.